UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHANNON MAYO,                       :    **CIVIL NO. 1:04-CV-2272**
                                    :
              Plaintiff             :    (Judge Kane)
                                    :
       v.                           :    (Magistrate Judge Smyser)
                                    :
THE CITY OF YORK, PA;               :
JOHN VEATER; CLAY STEVENS;          :
NICK HANSEL; BART SEELIG;           :
and SHAWN ROSIER,                   :
                                    :
              Defendants            :


**REPORT AND RECOMMENDATION**


     This is a 42 U.S.C. § 1983 civil rights action
initiated by a complaint filed on October 18, 2004.  A motion
to dismiss the complaint was withdrawn after an amended
complaint was filed on November 26, 2004.  Doc. 10.  A motion
to dismiss the amended complaint was denied by Order of
March 18, 2005.  Doc. 27.


     The plaintiff filed a motion for partial summary
judgment on July 26, 2005, Doc. 46, a LR 56.1 statement,
Doc. 47, a brief in support and exhibits.  Doc. 49.  An
opposing brief was filed on August 17, 2005.  Doc. 58.  A
defendants' LR 56.1 statement of facts was filed on August 17,

2005 (Doc. 59).  A reply brief was filed on September 6, 2005. Doc. 68.

The defendants filed a motion for summary judgment on August 15, 2005, Doc. 58, with a LR 56.1 statement of facts, Doc. 57, a brief in support, Doc. 60, and exhibits, Doc. 61. An opposing brief was filed on September 7, 2005, with exhibits.  A reply brief was filed on September 26, 2005. Doc. 76.

The plaintiff filed a motion to strike exhibits on September 21, 2005, Doc. 74, and a supporting brief.  Doc. 75. A brief in opposition to the plaintiff's motion to strike was filed on October 10, 2005.  Doc. 77.

This Report and Recommendation addresses the outstanding motions.

The plaintiff is Shannon Mayo.  The defendants are the City of York and York Police Officers John Veater,[1] Clay

---

[1]    The plaintiff has acknowledged that the caption misspells this defendant's last name.

2

Stevens, Nick Hansel, Bart Seelig and Shawn Rosier.  Mayo was
arrested at his home by the police officer defendants early in
the morning of October 18, 2004, and was held for an evaluation
for an involuntary commitment under Section 302 of the
Pennsylvania Mental Health Procedures Act.  His claims against
the officers are that his arrest and custody, the search of his
house, and seizures of property belonging to him from his
residence, were in violation of his rights under the Fourth
Amendment.  His claims against the City of York are based upon
a Fourth Amendment failure to train and supervise theory and a
Fourteenth Amendment theory involving items of his property
that were seized and not returned to him.

     The amended complaint relates that on October 18, 2004,
in the City of York, in the early morning hours, the plaintiff
had been drinking and got into an argument with his son.  After
his son had left, the plaintiff became sad over the argument
with his son.  He went to the York Hospital Crisis Intervention
Unit to seek counseling, but left there without speaking to
anyone.  When he arrived back at his home, he found that his
son had come back there in his absence and had broken dishes,
glassware and a coffee maker on the floor.  He then dialed 911,
asking to be patched through to the York Hospital Crisis

Intervention Unit.  He was asked by the 911 operator whether he needed the police, and he responded that he did not.  He said that he did not need an ambulance.  The 911 operator told him that he would try to patch the plaintiff through to the crisis intervention unit.  The plaintiff stated that he would hold on the line.

While he was on hold, defendant Veater knocked on his door.  Defendant Stevens was present.  Defendant Veater asked the plaintiff if he had called 911, and the plaintiff responded that he had and that he did not need the police.  Defendant Veater asked whether the plaintiff needed to go to the hospital, and the plaintiff said no.  Defendant Veater asked why the plaintiff had called 911.  The plaintiff responded that he wanted to talk to someone at the crisis intervention center about his argument with his son.

Defendants Hansel, Seelig and Rosier arrived.  These officers took positions in the alley adjacent to the plaintiff's home.  Then Defendant Veater attempted to enter the home.  The door was latched, and he could not gain entry.  The plaintiff was asked to permit entry, and he refused.  More conversation followed between the plaintiff and defendant

4

Veater, and then an ambulance arrived.  The ambulance was released by the officers who told the driver that the plaintiff was not going to go to the hospital.  Defendant Veater repeatedly yanked on the plaintiff's door.  At a later point, the plaintiff told Veater that he was going to bed.  The plaintiff left the front room.  Defendant Veater was heard to say to the other officers that the plaintiff had a lot of guns and that the police were going to get the guns.

The complaint alleges that the officers cut power to the plaintiff's house.  They drew their guns.  Defendant Veater again offered transport for the plaintiff to the hospital.  The plaintiff told defendant Veater that he was feeling better and that he was going to bed.  Then the defendant officers partially broke down the plaintiff's front door.  The plaintiff then opened the door and the officers entered the residence.

The plaintiff was handcuffed and transported to the York Hospital.  The officers requested an evaluation of the plaintiff pursuant to Section 302 of the Pennsylvania Mental Health Procedures Act to determine whether he should be involuntarily committed.

It is alleged that the officers wrongly told the hospital staff that the plaintiff had barricaded himself in his home and had threatened to kill himself.

The plaintiff was released from the hospital later that morning.

During his absence from his home, the plaintiff's home was searched with no warrant and his firearms were seized. These were not returned to him for over a year.

Counts One through Five are claims against the individual officer defendants, each count claiming a Fourth Amendment violation.  Counts Six and Seven are Fourth Amendment claims alleging an unlawful policy, custom, practice or procedure and a failure to train.  Count Eight is a claim against the City under the Fourteenth Amendment claiming a wrongful confiscation of property without due process.

An answer was filed by the defendants to the amended complaint on April 1, 2005 (Doc. 29), placing some of the plaintiff's pleaded facts in dispute.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may discharge that burden by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477

7

U.S. 242, 249 (1986)).  A material factual dispute is a dispute as to a factual issue that will affect the outcome of the trial under governing law.  *Anderson*, *supra*, 477 U.S. at 248.  In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party.  *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322.  "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

Section 7302 of the Pennsylvania Mental Health Procedures Act states that "upon written application by a

physician or other responsible party setting forth facts

constituting reasonable grounds to believe a person is severely

mentally disabled and in need of immediate treatment, the

county administrator may issue a warrant requiring ... any

peace officer [] to take such person to the facility specified

in the warrant."  50 P.S. § 7302(a)(1).


        Section 302(a)(2) of the Act also provides for an

emergency examination without a warrant as follows:

        Upon personal observation of the conduct of a
        person constituting reasonable grounds to
        believe that he is severely mentally disabled
        and in need of immediate treatment, any
        physician or peace officer, or anyone
        authorized by the county administrator may
        take such person to an approved facility for
        an emergency examination.

50 P.S. § 7302(a)(2).  This case involves a Section 302(a)(2)

warrantless seizure of the plaintiff.


        The Act defines "severely mentally disabled":

        A person is severely mentally disabled when,
        as a result of mental illness, his capacity to
        exercise self-control, judgment and discretion
        in the conduct of his affairs and social
        relations or to care for his own personal
        needs is so lessened that he poses a clear and
        present danger of harm to others or to
        himself.

50 P.S. § 7301.

We will first address the plaintiff's motion for partial summary judgment.  The plaintiff asks the court to enter summary judgment on the issue whether defendants Veater and Stevens violated the plaintiff's Fourth Amendment right to be free from an unreasonable search of his home and seizure of his personal property.[2]  For the following reasons, it will be recommended that summary judgment be entered in favor of the defendants and against the plaintiff upon the question whether the plaintiff's Fourth Amendment rights were violated by the warrantless search of his home and that summary judgment be entered in favor of the plaintiff and against the defendants[3] on the issue whether the Fourth Amendment rights of the plaintiff were violated by the defendants' seizure and retention of the personal property of the plaintiff.

The Fourth Amendment provides that persons have a right to be secure in their persons, houses, papers and effects

---

[2]

The plaintiff does not seek summary judgment on the issue whether the seizure of his person was a Fourth Amendment violation. The defendants do seek summary judgment on that issue.

[3]

It is recommended however, *infra,* that summary judgment be granted in favor of defendants Seelig and Rosier based upon a lack of personal involvement.

against unreasonable searches and seizures and that a search warrant shall not issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.  A search warrant and probable cause is required to conduct a search of a house, except that a search without a warrant may be justified by exigent circumstances, such as when officers reasonably believe that someone is in immediate need of assistance, to protect or preserve life, or to avoid serious injury.  *Mincey v. Arizona*, 437 U.S. 385, 392-393 (1978).

The undisputed material facts are that the plaintiff initiated contact with York City public agencies with a call for help in which he expressed in various ways a highly disturbed, agitated and potentially violent emotional state. The recorded message is a part of the summary judgment record. Doc. 61.  The plaintiff's desperate tone of voice and expressions of possible future violence caused 911 emergency personnel to contact the York City Police.  The plaintiff had emphasized in his 911 telephone call that he did not want the police to come to his home.  The police did go to his home, however, and a stand off at the plaintiff's door ensued.

11

Defendant Veater states that the plaintiff said after the stand off at the plaintiff's doorway, "that's it, I'm going to end it," and then closed his front door.  The plaintiff disputes that he said these words.  We find it to be undisputed that defendant Veater and the other defendants believed, with a factual basis for the belief, that the plaintiff had guns in his house.  The plaintiff's 911 call had indicated a very distraught state of mind on the part of the plaintiff and a threat on his part to do violence.  As noted, the plaintiff had also emphasized that he did not want the police to come to his house.  That fact caused the police to be concerned about whether something had occurred in the house.  The defendant officers state that the plaintiff's demeanor and conduct at his doorway also indicated a very distraught state of mind.  The location of the defendant's son, with whom there had been a quarrel was not known.  There was evidence of a fight, with broken dishes covering the floor.  The search occurred after the plaintiff had been arrested and taken from the location of his home.

The plaintiff's Fourth Amendment argument concerns the warrantless search of his home that was conducted after he had been handcuffed and taken away from his home.

The defendants contend that probable cause existed to
search for weapons because pursuant to 18 Pa. C.S.A. § 6105 the
plaintiff could no longer lawfully possess handguns.  Even if
that assertion were correct, which it is not,[4] justification for
a warrantless search is not provided merely by the existence of
probable cause to conduct a search.  There must also be a
lawful basis for an exception to the Fourth Amendment warrant
requirement.

The defendants assert that exigent circumstances to
conduct a warrantless search were presented.  The circumstances
that they contend were exigent in combination were the
plaintiff's statement in his 911 call that he was going to be
violent, the belief of the defendants that there were firearms
in the home, the concern that the plaintiff's son might have
been injured and might be in the home, and the fact that the
floor of the home was littered with broken dishes suggesting
that a fight had occurred.  We also take into consideration the
defendants' belief that the plaintiff was suicidal.  The
defendants assert that there was a reasonable basis for an

---

[4]*Infra*, pp. 18, 19, 27.

inference that an injured person might be in the house,
justifying a prompt search.

As already noted, the defendants' contention is in part
that a warrantless search for weapons was justified.  "These
undisputed facts demonstrate sufficient exigent circumstances
to justify the search for, and the securing of the weapons in
the house."  Doc. 58, p.15.  We do not agree that a warrantless
search for weapons was justified; rather, we conclude, a
warrant to search for weapons should have been sought.  The
house could have been attended and guarded against a
disturbance, with the plaintiff on his way to the hospital,
while a warrant application was made to a judicial officer.

The other motivation and justification to enter the
home right away was a motivation and justification based upon a
concern for possible injured persons.  As stated in defendant
Stevens' deposition testimony:

> Q.   Did you actually go back inside and
>      search the residence?
>
> A.   Correct.

Q.    Did you talk to Lieutenant Veater
      about searching the residence before
      you went back inside?

A.    Not that I recall.

Q.    Why did you go back inside the home
      to search the residence?

A.    To just basically see that there was
      no one else in there that was
      possibly injured.  That was my
      understanding or my thinking,
      anyway.

Q.    Had Mr. Mayo said anything to
      indicate to you that there had been
      an altercation or that he had
      injured anybody prior to Officer
      Veater kicking his door in?

A.    I remember having knowledge just of
      an argument.  And there again, I
      can't remember whether it was the 9-
      1-1 dispatch call that recognized an
      argument between Mr. Mayo and his
      son.  At what point this incident,
      it was clear – again I'm going to
      reflect back to the 9-1-1 call –
      that there was an argument between
      Mr. Mayo and his son.

      So unaware whether he was in the
      home, if that answers your question.
      I'm not sure.

Q.    Did you have time to secure the
      outside of the home and obtain a
      search warrant?

A.    Before?

Q.    Before you entered the home.  Could
      you have secured the home and

15

        obtained a search warrant while
        Mr. Mayo was at the hospital?

A.    To search for a body?

Q.    To search for anything that you felt
        was –

A.    Not knowing what really took place,
        that was, you know, the whole reason
        to search.  We didn't know what
        actually took place between Mr. Mayo
        and his son, whether, you know, he
        was harmed or what the circumstances
        were.

        You know, I'm speculating now.  I'm
        going inside in good faith basically
        to see that no one else is injured,
        which is I'm relating to the son.
        We could physically or visibly see
        that Mr. Mayo was okay.

Q.    Did the police dispatcher ever
        indicate that they had a physical
        fist fight?

A.    Not that I recall.

Q.    So you didn't have any reason to
        believe – specific reason to believe
        that he there might be somebody
        injured inside other than knowing
        that there was an altercation?

A.    Correct, other than when we went in,
        and it was easily visible to see
        that there was some type of
        disturbance that happened in the
        kitchen, you know, with broken dish
        ware and items like that.

Doc. 61, Exhibit 4, pp.54-57.

The plaintiff's argument in opposition to the exigent circumstances justification for a warrantless search of the home after the plaintiff's arrest is that there is not evidence of a reasonable belief that someone was in danger. The plaintiff asserts that defendant Stevens' concern about the possibility of harm to the plaintiff's son, in that it was a concern about a mere possibility rather than a concern about a more certain or more likely matter, did not arise to the level of an adequate justification for an exigent circumstances search. However, this series of events was initiated by the plaintiff's distraught 911 call in which he had evinced that he feared his own behavior and had stated that he did not want anyone to come to his home. He had reported a tumultuous quarrel with his son. The home upon the officers' view into it revealed the remnants of a tumultuous quarrel. The plaintiff was known to have guns. Even if there were circumstances to support an inference that plaintiff's son had left the house, there were also inferences to give rise to a reasonable concern that the plaintiff's son could be in the house or that some other violence and injury had occurred in the house. There were exigent circumstances justifying an immediate warrantless search.

It is recommended that summary judgment be granted in favor of the defendants and against the plaintiff on the issue of whether there was a violation of the Fourth Amendment upon the warrantless search of the plaintiff's home, for the reason that a prompt search by the defendants for any injured person was justified by the circumstances in the interest of safety and life preservation.

We concluded, above, that there was not a justification for a warrantless search for weapons.  The issue of the validity of the seizure and retention of the plaintiff's guns is considered next.  This is a discrete issue, separate from the issue of the validity of the search of the home.  An officer may not seize property unless there is probable cause to believe that it is contraband, fruits of, an instrumentality of or evidence of a crime.  Rule 201, Pennsylvania Rules of Criminal Procedure.

The defendants' justification for having seized the plaintiffs' weapons is that they had reason to believe that he had been involuntarily committed pursuant to the Pennsylvania Mental Health Procedures Act.  A person committed under that Act is not permitted to possess a firearm.  The defendants'

18

justification for the seizure is that the plaintiff's possession of the firearms was unlawful.

The defendants did not have a basis to know when they seized the firearms that there had been a section 302 commitment.  They had no basis to reasonably believe that there had been a commitment.  They did not have a basis to believe that the possession by the plaintiff of firearms was unlawful. There was not a basis in law for the defendants to seize or to hold the plaintiff's firearms.  The plaintiff is entitled to summary judgment on the issue whether the defendants' seizure and retention of his firearms was lawful, in that there is not a legal basis upon which the search has been justified.

There is not an adequate showing made by the defendants that a reasonable officer would not have known that the seizure of the plaintiff's guns was a violation of his Fourth Amendment rights to give rise to qualified immunity for the defendants as to the seizure and retention of the plaintiff's guns.

Now we will turn to address the issues raised by the defendants in their motion for summary judgment.

19

The defendants' first summary judgment issue is whether there is an absence of a dispute as to the facts relevant to whether the plaintiff presented a threat of imminent bodily harm to himself or to others so as to justify taking him into custody pursuant to Section 7302 of the Pennsylvania Mental Health Procedures Act in a context where there was not probable cause to believe a crime had been committed and there was not an arrest warrant.

As stated by the Court in *Shay v. County of Berks*, 2003 U.S. Dist. LEXIS 12238 (E.D.Pa. 2003):

> Although the *Fourth Amendment* generally requires police to proceed with a warrant and probable cause prior to arresting an individual, in *Griffin v. Wisconsin*, *483 U.S. 868, 873, 97 L.Ed. 2d 709, 107 S. Ct. 3164 (1987)*, the Supreme Court recognized an exception to this rule where a case implicates "special needs." The Court defined a "special need" as a purpose "beyond the normal need for law enforcement, [which] makes the warrant and probable-cause requirement impracticable." *Doby, 171 F.3d at 871* (quoting *Griffin, 483 U.S. at 873)*.
>
> In light of this Supreme Court precedent, our Court of Appeals held in *Doby* that "the temporary involuntary commitment of those deemed dangerous to themselves or others qualifies as a 'special need' permitting the state to act without a warrant." *Doby, 171 F.3d at 871* (citing *McCabe v. Life-Line Ambulance Serv. Inc., 77 F.3d 540, 549 (1st Cir. 1996)).* In so holding, the court

20

reasoned that requiring the county to seek a
warrant from a magistrate in a situation where
the county delegate has determined that there
are reasonable grounds to believe in an
individual's 'clear and present' dangerousness
would entail delays with potentially life-
threatening consequences." *Id.* These life-
threatening circumstances are by definition
emergencies, and "such emergency cases present
a situation where seeking a warrant is
systemically impracticable." *Id.* Moreover,
the court recognized that "a magistrate's
authorization is less desirable in cases where
non-judicial expertise is involved, ... [such
as] render[ing] the decision of whether an
individual requires an emergency involuntary
examination." *Id. at 872.*

The court stated, however, that "although ...
the 'special need' exception applies to the
county's conduct under the MHPA, we
nevertheless must examine whether the
procedures followed by the county are
reasonable under the circumstances." *Id.*
Continuing with that analysis, the court
stated that "*Fourth Amendment* doctrine
provides that 'the shorter the detention, the
less compelling is the evidence of the
necessity for it that the authorities need to
produce." *Id.* (Quoting *Villanova v. Abrams,
972 F.2d 792, 796 (7th Cir. 1992)).* The court
reasoned that because "the MHPA requires that
a physician examine a detained [*30]
individual within two hours of his or her
arrival at a hospital[,] ... that individual's
liberty will be curtailed for at most several
hours unless a physician independently
concludes that the individual is mentally
disabled and in need of involuntary
treatment." *Id.* Moreover, the court once
again stated that the procedure for issuing a
warrant contained numerous devices – such as
the warning of criminal prosecution on the
face of the application and the requirement
that independent, detached county

21

administrators make the ultimate determination
– which acted as gatekeepers.  *Id.*  In light
of this reasoning, the court held that the
procedures were reasonable and thus did not
offend the *Fourth Amendment.*  *Id.*

We have already decided, as discussed above, that the

undisputed material facts warrant summary judgment for the

defendants on the issue of the [exigent circumstances] validity

of the warrantless search of the home.  The same evidence

supports the defendants' belief that a special need, the

plaintiff's danger to himself and others, justified his arrest

and justified his involuntary commitment in the absence of

criminal probable cause.  The defendants' summary judgment

evidence establishes that the officers who arrested the

plaintiff had probable cause to believe that the plaintiff

presented an imminent threat of serious bodily injury to

himself or to other persons and that his seizure was justified

under 50 P.S. § 7302(a)(2).  The officers dispatched to the

plaintiff's home knew that the plaintiff had called 911, that

he had been uncooperative and that he had said that he did not

feel right and felt messed up.  They knew that he had told the

911 center that he would get violent and also that he did not

want anyone, specifically not the police, to come to his home.

The responding officers knew that the plaintiff had firearms

and they observed when they arrived that a fight or struggle had occurred in the home in that dishes were broken on the floor.  The plaintiff's behavior was distraught, angry, demonstrative and emotional.  The officers decided that the plaintiff presented a danger to himself or other persons.

The plaintiff had called 911.  The recorded communication, a part of the summary judgment evidence, reveals that he was plainly distraught and had lost self control.  Lt. Veater testified that prior to the plaintiff closing his front door, he formed the opinion that the plaintiff was a danger to himself or others.  SMF at ¶ 60.  Lt. Veater told Officer Stevens that he would like to separate the plaintiff from his weapons.  SMF at ¶ 61.  Officer Hansel considered that intoxicated persons commit suicide more frequently than sober persons, the plaintiff's mood swings, crying, depression, the plaintiff's fight with his son, slamming the door, and the plaintiff's threat to get guns.  Hansel formed the opinion that the plaintiff was a danger to himself and others.

The plaintiff closed his front door while the officers were still talking to him.  SMF at ¶ 52.  Defendant Veater attempted to force the plaintiff's front door open.  SMF at

¶ 66.  After the door was struck several times, the plaintiff opened the door and walked outside.  SMF at ¶ 69.  The plaintiff states that the officers did not enter his home to seize him.  SMF at ¶ 70.  When the plaintiff exited his home, the officers stood back and let him walk out.  SMF at ¶ 71.  The officers placed the plaintiff in handcuffs but did not injure him.  SMF at ¶ 72.  The plaintiff was patted down and live .410 caliber shotgun shells were located in a pants pocket.  SMF at ¶ 73.  The plaintiff was transported to the hospital.  SMF at ¶ 74.

We consider the plaintiff's factual disagreements not to be material as to the issue of probable cause on the defendants' part to consider the plaintiff to be a danger to himself or to others.  *See* Doc. 69, pp.9-16.  The judgment of the defendant police officers on the scene that the plaintiff was a danger to himself or others can not, we conclude, be reasonably refuted by the recollections of the plaintiff.  The plaintiff's self-assessment, after the fact, of himself as having moderated his feelings and his demeanor to the extent that a reasonable observer would no longer consider him to be dangerous does not in our view give rise to a dispute as to whether a reasonable police officer would have considered him

to continue to be dangerous to self or others.  The plaintiff

was intoxicated and emotionally distraught, and he contacted a

municipal crisis intervention agency because he was in a state

of crisis.  His efforts at a revision of the facts and

circumstances of that evening, as to which he plainly is not a

reliable witness, are not reasonably given any weight.

The plaintiff disputes Nos. 55, 56, 57, 58, 59, 60, 61,

62, 63 and 64 of the defendants' proffered undisputed facts.

Doc. 70.  We have accepted these as undisputed facts only to

the extent stated above.  In disputing them, the plaintiff

argues as to these putative undisputed facts that the court is

not required to accept the officers' characterizations or

perceptions of the event.  The court's function in the summary

judgment context is to determine whether a factual issue is

material and, if so, whether there is evidence to support the

moving party's version and, if so, whether there is evidence to

support the opposing party's version.  Here, the material

factual issue has to do with the defendant officers'

perceptions and not the plaintiff's state of mind.   The

defendant officers had to make an essentially predictive,

future-oriented finding as to dangerousness, a task materially

unlike an investigative, historical event-oriented probable
cause determination when a crime has been committed.

      We have carefully considered the plaintiff's argument
that an officer must be held to recognize the difference
between, on the one hand, a distraught and drunken state and,
on the other hand, a distraught and mentally unhealthy state.
But the officer's duty under the Pennsylvania Mental Health
Procedures Act is to determine whether the person is a serious
danger to self or to others, not to make a determination about
the person's mental status in mental health terms.  The summary
judgment evidence reasonably supports an inference that a
decision by officers that the plaintiff was a danger to himself
or to others was, by application of a probable cause standard,
supported by the evidence and information presented to the
officers.

      In view of our determination that the undisputed facts
establish that there was probable cause to take custody of the
plaintiff pursuant to the Mental Health Procedures Act, 50 P.S.
§ 7302(a)(2) on the basis that the plaintiff's actions
indicated that he was not able to satisfy his need for self-
protection and safety and there was a reasonable probability of

26

serious bodily injury or serious physical debilitation, there
is no basis to reach the defendants' second argument (that the
probable cause standard as applied to Section 7302 was not
clearly established law).

As already stated, we recommend summary judgment in the
plaintiff's favor as to his claim of a wrongful seizure of his
firearms.  The defendants' proffered extension of the existence
of 50 Pa. C.S. § 7302(a)(2) probable cause to take custody of
the plaintiff into probable cause to seize firearms on the
basis that it was a violation of 18 Pa. C.S.A. § 6105(c)(4) and
18 Pa. C.S.A. § 6105(a)(1) for the plaintiff to possess
firearms is plainly wrong and must accordingly be rejected.
The plaintiff had not been adjudicated or involuntarily
committed under the Mental Health Procedures Act when the
firearms seizure occurred and so did not meet the criteria of
Section 6105(c)(4).  Even if he had been adjudicated or
committed, he had not committed an offense under Section 6105
when he had not voluntarily possessed a firearm after becoming
ineligible to possess firearms.  Therefore, there was not
probable cause to seize firearms as evidence of a crime.
Assuming *arguendo* a lawful basis for seizure would be presented
upon the involuntary mental health commitment of the plaintiff,

no justification for a warrantless seizure is presented.   The defendants are not entitled to summary judgment on the issue whether the seizure of the firearms was in violation of the Fourth Amendment rights of the plaintiff.

The seizure of the firearms without probable cause to believe that they were evidence of a crime and without a warrant is a violation of clearly established law, and the defendants make no showing to the contrary.   Therefore, as stated above, summary judgment in the plaintiff's favor will be recommended as to that claim.   This summary judgment should be entered in favor of the plaintiff and against defendants Veater, Stevens and Hansel.

Defendants Seelig and Rosier argue that they are entitled to summary judgment because they were not personally involved in a violation of the federally protected rights of the plaintiff.   These defendants were not involved in the search of the plaintiff's home nor in the seizure of his property.   These two officers were present with the others at the plaintiff's home, but there is not evidence that they participated in the decision to seize firearms.   Since it is the seizure and retention of firearms that gives rise to

summary judgment in favor of the plaintiff, since there is no evidence of personal involvement on the part of these defendants in that conduct, and since these defendants are otherwise entitled to summary judgment, it will be recommended that the motion of defendants Seelig and Rosier for summary judgment be granted.

The defendant City of York's potential liability is in view of the foregoing analysis and the following recommendations limited to its putative policy of permitting or requiring the retention of wrongfully seized property.  The City of York has not demonstrated that it did not participate by a policy or a directive in the decision not to return property wrongfully seized to its owner, the plaintiff.  It will be recommended that the defendant City of York's motion for summary judgment be denied as to the plaintiff's claim that his firearms were wrongfully seized and retained.

It is recommended that the plaintiff's motion for partial summary judgment be denied in part and granted in part. It is recommended that the defendants' motion for summary judgment be denied in part and granted in part.  It is recommended that summary judgment be granted in favor of the

29

plaintiff and against defendants Veater, Stevens and Hansel on the issue whether the seizure of the plaintiff's property (firearms) and the retention of them was in violation of his Fourth Amendment rights.  It is recommended that summary judgment be granted in favor of all defendants and against the plaintiff on the issue whether the search of the plaintiff's home was in violation of his federally protected rights and on the issue whether the seizure of the person of the plaintiff was in violation of his rights.   It is recommended that summary judgment be granted in favor of defendants Seelig and Rosier and that the complaint be dismissed as to these two defendants.

It is recommended that the case be listed for trial on the remaining liability claims including the liability of the City of York for the wrongful seizure and retention of the plaintiff's firearms, the personal involvement of the individual defendants in the wrongful seizure and retention of the plaintiff's firearms and the damages suffered by the plaintiff due to the wrongful seizure and retention of his firearms.

It is recommended that the plaintiff's motion to strike be granted and that Exhibits 9 and 10 filed by the defendants in support of their motion for summary judgment not be considered by the court in its determination of the motions for summary judgment.  The statements made by the plaintiff to medical personnel after the incidents at his home were over show, according to the defendants, that the plaintiff "continued to have violent thoughts toward the police." Assuming arguendo that Exhibit 9, Doc. 61 shows this, it is not relevant to the material factual issue of whether the defendant police officers had grounds several hours earlier to search the plaintiff's home and to seize the person of the plaintiff and firearms from his home.  Doc. 61, Exhibit 10 shows that the earlier decision to commit the plaintiff was justified, the defendants argue.  We have found the defendants to be entitled to summary judgment on that issue, but do not consider after-the-fact evidence of medical decisions and treatment to be relevant.  These exhibits have not been considered by this magistrate judge in the process and context of this Report and Recommendation.

                                     _/s/ J. Andrew Smyser_
_____        J. Andrew Smyser
                                     Magistrate Judge
Dated:   October 13, 2005.