**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHANNON MAYO,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 1:04-CV-2272** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **THE CITY OF YORK, PA;** | : | |
| **JOHN VEATER; CLAY STEVENS;** | : | |
| **NICK HANSEL; BART SEELIG;** | : | |
| **and SHAWN ROSIER,** | : | |
| | : | |
| **Defendants** | : | |

<u>**MEMORANDUM**</u>

In this civil action, Plaintiff has brought suit against the City of York, Pennsylvania, and five of the city's police officers, alleging that Defendants violated his civil rights when they took him into custody pursuant to Section 7312 of the Pennsylvania Mental Health Act and, in connection therewith, conducted a warrantless search of Plaintiff's home, seizing and retaining firearms and ammunition in the process.  Now pending before the Court for disposition are cross-motions for summary judgment and a motion to strike filed by Plaintiff.  (Doc. Nos. 46, 56, 74.)  Magistrate Judge Smyser has issued a report and recommendation to which Plaintiff and Defendants have filed timely objections.  (Doc. Nos. 78, 87, 91.)  For the reasons that follow, Magistrate Judge Smyser's Report and Recommendation will be adopted in part, Plaintiff's Partial Motion for Summary Judgment and Motion to Strike will be granted, and Defendants' Motion for Summary Judgment will be granted in part and denied in part.

## I.    BACKGROUND

### A.    Factual Background[1]

In the early morning hours of October 18, 2004, Plaintiff, a resident of the City of York, had been drinking and got into an argument with his underage son at Plaintiff's home.  After Plaintiff's son left the home, Plaintiff attempted to seek counseling at the York Hospital Crisis Intervention Unit.  However, Plaintiff reconsidered and returned home without speaking to a counselor.  Upon his return, Plaintiff discovered that, in his absence, his son had broken various items in Plaintiff's kitchen.  Thereafter, Plaintiff called 911 and asked to be put through to the York Hospital Crisis Intervention Unit.  The 911 operator asked whether Plaintiff needed police or medical response, and Plaintiff responded that he did not want either.  The 911 operator told Plaintiff to hold while his call was routed to the intervention unit.

While Plaintiff remained on hold with the 911 operator, Defendant York City Police Officers Veater and Hansel arrived at Plaintiff's house.  Defendant Officers Stevens, Seelig, and Rosier also arrived and took positions near Plaintiff's home.  Through their previous interactions with Plaintiff, Defendants were aware that Plaintiff owned firearms.  Defendants decided that Defendant Veater should make contact with Plaintiff, Defendant Stevens would wait in a nearby alley, and Defendant Hansel would take a position on the sidewalk to the left of Plaintiff's front stoop.  After the officers took their positions, Defendant Veater knocked on Plaintiff's front door.

_____

[1]  The following facts are taken from the undisputed facts contained in the parties' statements of material facts submitted in support of the cross-motions for summary judgment. (Doc. Nos. 47, 57.)  For purposes of this Order, those facts that are undisputed will be accepted as true.

Though Plaintiff refused Defendant Veater's requests for entry, the two spoke through Plaintiff's closed storm door, and Plaintiff advised Officer Veater that his son was no longer in the house.  During the course of the conversation, Defendant Veater pulled on the handle of the storm door several times.  Plaintiff was upset and at one point struck the storm door window with his hand.  At some point during the conversation, an ambulance arrived at the home but it ultimately left the scene, as Plaintiff was unwilling to go to the hospital.

Eventually, Plaintiff made a final comment to Defendant Veater and closed his front door.[2]  Defendant Veater attempted to kick open Plaintiff's door, and Plaintiff subsequently came out of the house.  Officers patted him down and discovered that he was carrying live .410 caliber shotgun shells.  Plaintiff was handcuffed and transported by Defendant Hansel to the York Hospital for the purpose of having him evaluated for an involuntary civil commitment pursuant to § 7302 of the Pennsylvania Mental Health Procedures Act, 50 Pa. Cons. Stat. Ann. §§ 7101 et seq.  Defendants Seelig and Rosier also traveled to York Hospital to assist Defendant Hansel.  Plaintiff was released from the hospital later that morning.

After Plaintiff had been taken to the hospital, Defendants Veater and Stevens conducted a warrantless search of Plaintiff's home.  During the search, the officers discovered firearms and ammunition on the second floor of Plaintiff's residence in an alcove or closet near his bedroom. Defendants Veater and Stevens seized the firearms and ammunition without a warrant. Plaintiff's firearms were not returned until November 3, 2003.

**B.**     **Procedural History**

---

[2] The parties dispute whether Plaintiff said he was "going to bed" (Doc. No. 61, Dep. of Mayo, 159), "going to end it" (Doc. No. 61, Dep. of Veater, 69), or "going to get his guns" (Doc. No. 61, Dep. of Hansel, 49).

Plaintiff filed a complaint on October 18, 2004, (Doc. No. 1), which he subsequently amended on November 26, 2004.  (Doc. No. 10.)  Plaintiff brings a civil rights action under 42 U.S.C. § 1983 for alleged violations of his Fourth and Fourteenth Amendment rights.  Plaintiff has named as Defendants the City of York, Pennsylvania ("York") and City of York Police Officers John Veater,[3] Clay Stevens, Nick Hansel, Bart Seelig, and Shawn Rosier.

Counts I through V of Plaintiff's amended complaint are brought against the Defendant officers in their individual capacities alleging violations of Plaintiff's Fourth Amendment rights under 42 U.S.C. § 1983.  Similarly, Counts VI and VII are against Defendant York for violation of Plaintiff's Fourth Amendment rights and Count VIII is brought against Defendant York for violation of Plaintiff's Fourteenth Amendment rights.

On July 26, 2005, Plaintiff filed a motion for partial summary judgment.  (Doc. No. 46.) On August 15, 2005, Defendants filed a motion for summary judgment.  (Doc. No. 57.) Subsequently, Plaintiff moved to strike certain exhibits that Defendants filed.  (Doc. No. 74.) The motions have been fully briefed and are ripe for disposition.

On October 13, 2005, Magistrate Judge Smyser issued a report and recommendation on the parties' cross-motions for summary judgment and Plaintiff's motion to strike.  (Doc. No. 78.) In his Report and Recommendation, Judge Smyser recommended that summary judgment be granted in favor of Plaintiff and against Defendants Veater, Stevens, and Hansel on the issue of whether the seizure of Plaintiff's property and retention thereof was a violation of the Fourth Amendment.  Judge Sysmer also recommended that summary judgment be granted in favor of all

---

[3]  The Court notes that Defendant Veater's name is spelled incorrectly in the Amended Complaint.  The Court uses the correct spelling of Defendant Veater's name herein.

Defendants and against Plaintiff on the issue of whether the search of Plaintiff's home was a violation of Plaintiff's rights under the Fourth Amendment.  Similarly, Judge Smyser recommended that summary judgment be granted in favor of all Defendants on the issue of whether the seizure of Plaintiff's person was conducted in violation of the Fourth Amendment. Judge Smyser further recommended that summary judgment be granted in favor of Defendants Seelig and Rosier on all issues but denied with respect to Defendant York on the issue of whether the seizure and retention of Plaintiff's property violated the Fourth Amendment. Finally, Judge Smyser recommends that the Court grant Plaintiff's Motion to Strike exhibits 9 and 10 filed in support of their motion for summary judgment.

On November 4, 2004, Defendants filed objections to the report and recommendation. (Doc. No. 87.)  Defendants contend that Judge Smyser erred by failing to grant summary judgment in favor of Defendant Hansel on the issue of whether the seizure of Plaintiff's property violated the Fourth Amendment.  Defendants also object to Judge Smyser's determination that Defendants Veater and Stevens violated the Fourth Amendment when they seized and retained Plaintiff's property.  Defendants further contend that Judge Smyser erred when he recommended that summary judgment be denied against Defendant York on the issue of whether the seizure and retention of Plaintiff's property was in violation of his rights.

On November 11, 2005, Plaintiff filed objections to the report and recommendation. (Doc. No. 91.)  Plaintiff contends that Judge Smyser erred in recommending that the Court grant summary judgment in favor of Defendants and against Plaintiff on the issues of seizure of Plaintiff's person and search of Plaintiff's residence.  Although Judge Smyser recommended that the Court decline to grant summary judgment to Defendant York on the issue of seizure and

retention of Plaintiff's property, Plaintiff asserts that Judge Smyser failed to address the question of whether the search of Plaintiff's home occurred as a result of a policy, practice, custom or procedure of Defendant York.

## II.   STANDARD OF REVIEW

When objections to a report and recommendation have been filed, the Court must make a de novo consideration of those portions of the report to which objections relate.  Carter v. Apfel, 220 F. Supp. 2d 393, 395 (M.D. Pa. 2000) (citing Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989)).  In so doing, the Court may accept, reject, or modify the findings and recommendations contained in the report.  28 U.S.C. § 636(b)(1); Local Rule 72.1.  Further, in the exercise of sound judicial discretion, the Court may rely on the Magistrate Judge's proposed findings and recommendations.  United States v. Raddatz, 447 U.S. 667, 676 (1980); Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984) ("[T]he Supreme Court has recognized the discretion afforded federal district courts in their use of magistrate's reports").

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual dispute is material if it might affect the outcome of the suit under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Factual disputes are genuine only if there is sufficient evidentiary basis which would allow a reasonable fact-finer to return a verdict for the non-moving party.  Id. at 249.  When deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, who is "entitled to every

reasonable inference that can be drawn from the record."  Merkle v. Upper Dublin Sch. Dist.,

211 F.3d 782, 788 (3d Cir. 2000).

Once the moving party has shown that there is an absence of evidence to support the

claims of the non-moving party, the non-moving party may not simply sit back and rest on the

allegations in his complaint; instead, he must "go beyond the pleadings and by [his] own

affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate

specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S.

317, 324 (1986) (internal quotations omitted).  Summary judgment should be granted where a

party "fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.

## III.   DISCUSSION

To prevail in an action under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation

of a right secured by the Constitution or the laws of the United States, committed by a person

acting under color of state law.  Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).  Plaintiff has

alleged that Defendants acted under color of law to violate Plaintiff's Fourth Amendment right to

be free from unreasonable searches of his home and seizure of his person and property.  Plaintiff

also alleges that Defendants violated his Fourth and Fourteenth Amendment rights through the

seizure and retention of Plaintiff's person and property and the search of his home without legal

justification or due process of law.

Defendants have moved for summary judgment on all of Plaintiff's claims, arguing that:

(a) Defendants Seelig and Rosier are entitled to summary judgment on Plaintiff's claims because

they were not personally involved in the search of Plaintiff's home or seizure of his person or

property; (b) individual Defendants had probable cause to seize Plaintiff's person pursuant to §

7302 of the Pennsylvania Mental Health Procedures Act ("MHPA") because Plaintiff presented

an imminent threat of serious bodily harm to himself or others; (c) individual Defendants had

probable cause to search Plaintiff's home; (d) individual Defendants had probable cause to seize

Plaintiff's firearms because Plaintiff no longer could legally possess the weapons pursuant to 18

Pa. Cons. Stat. Ann. § 6105, and because exigent circumstances existed to justify the seizure; (e)

the individual Defendants are entitled to qualified immunity; and (f) Plaintiff has failed to show

municipal liability by establishing that Defendant York maintained a policy, practice, or custom

that violated Plaintiff's rights.  (Doc. No. 56.)

Plaintiff has cross-moved for partial summary judgment on the issues of whether

Defendants Veater and Stevens violated Plaintiff's Fourth Amendment right to be free from an

unreasonable search of his home and unreasonable seizure of his property.  (Doc. No. 46.)

Plaintiff argues that exigent circumstances were not present and the search did not constitute a

valid sweep because Plaintiff was seized outside his home and no one else was at the residence.

In addition, Plaintiff has filed a motion to strike two of Defendants' exhibits from the record.

### A.   Personal Involvement

It is a fundamental tenet of § 1983 jurisprudence that in order to be held liable, an

individual defendant must have had personal involvement in the acts alleged.  Rode v.

Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Defendants argue that the complaint fails to

allege personal involvement in the violations asserted on the parts of Defendants Seelig and

Rosier, and therefore they should be entitled to summary judgment.  Magistrate Judge Smyser

recommended that Defendants Seelig and Rosier should be dismissed from the complaint.  (Doc.

No. 78 at 29.)

There is no evidence of record that Defendants Seelig or Rosier participated in the seizure of Plaintiff, the search of Plaintiff's home, nor the seizure of Plaintiff's property. At most, the record establishes that Defendants Seelig and Rosier were present at Plaintiff's home and at the York Hospital after Plaintiff was transported by Defendant Hansel. Therefore, the court finds that the record lacks evidence to support Plaintiff's claim that Defendants Seelig and Rosier were personally involved in any of the alleged violations of Plaintiff's rights. Accordingly, the Court will adopt Magistrate Judge Smyser's recommendation, and Defendants Seelig and Rosier will be granted summary judgment on Plaintiff's claims.

Defendants next assert that Magistrate Judge Smyser determined incorrectly that Defendant Hansel was liable for violating Plaintiff's rights by searching Plaintiff's home and seizing his guns. (Doc. No. 88 at 3.) There is no evidence of record that Defendant Hansel participated in the search of Plaintiff's home or the seizure of Plaintiff's property. It is undisputed that after Plaintiff was taken into custody, Defendant Hansel transported Plaintiff to the York Hospital. The search of Plaintiff's home and seizure of Plaintiff's property occurred after he was transported York Hospital. Although the record firmly establishes that Defendant Hansel was present when Plaintiff was taken into custody, it also shows that he was not present for the subsequent search of the home. Accordingly, the Court will grant summary judgment in favor of Defendant Hansel on the issues regarding the search of Plaintiff's home and seizure of his property.

### B.     Seizure of Plaintiff's Person

Counts I through V of Plaintiff's Amended Complaint allege that Defendants in their

individual capacities seized Plaintiff in violation of the Fourth Amendment.  (Doc. No. 10.)

Defendants moved for summary judgment on this issue, arguing that probable cause existed

because Plaintiff presented an imminent threat of serious bodily harm to himself or others, as

contemplated by the MHPA.  Magistrate Judge Smyser recommended that the Court grant

Defendants' motion on the basis that the Defendants "who arrested the plaintiff had probable

cause to believe that the plaintiff presented an imminent threat of serious bodily injury to himself

or to other persons and that his seizure was justified under 50 P.S. § 7302(a)(2)."  (Doc. No. 78

at 22.)  Plaintiff has objected to Judge Smyser's findings.  (Doc. No. 91.)

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . .

. against unreasonable . . . searches and seizures."  U.S. Const. amend. IV.  "The Fourth

Amendment applies to seizures in civil, as well as criminal, proceedings"; however, "the

fundamental inquiry in such proceedings . . . remains whether the government's conduct is

reasonable under the circumstances."  Doby v. DeCrescenzo, 171 F.3d 858, 871 (3d Cir. 1999)

(citations omitted).  In determining whether law enforcement officers acted reasonably, the Court

determines if their actions were "objectively reasonable in light of the facts and circumstances

confronting them, without regard to their underlying intent or motivation."  Doby, 171 F.3d at

874 (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).

A warrantless search is per se unreasonable under the Fourth Amendment.  Payton v.

New York, 445 U.S. 573, 586 (1980) ("[I]t is a basic principle of Fourth Amendment law that

searches and seizures inside a home without a warrant are presumptively unreasonable.").

Unless a warrantless police search "falls within one of the narrow and well-delineated exceptions

to the warrant requirement," it is invalid.  Flippo v. West Virginia, 528 U.S. 11, 13 (1999) (citing

<u>Katz v. United States</u>, 389 U.S. 347, 357 (1967)).  A recognized exception to the warrant

requirement may occur when "special needs, beyond the normal need for law enforcement, make

the warrant and probable-cause requirement impracticable."  <u>Griffin v. Wisconsin</u>, 483 U.S. 868,

873 (1987) (quoting <u>New Jersey v. T.L.O.</u>, 469 U.S. 325, 351 (1985) (Blackmun, J.,

concurring)).  Seizures pursuant to the MHPA can fall within the "special needs" exception to

the warrant and probable cause requirements.  <u>See</u> <u>Doby</u>, 171 F.3d at 871 ("[T]he temporary

involuntary commitment of those deemed dangerous to themselves or others [pursuant to the

MHPA] qualifies as a 'special need' permitting the state to act without a warrant.").

Being committed involuntarily to a mental institution "constitutes a significant

deprivation of liberty that requires due process protection."  <u>Addington v. Texas</u>, 441 U.S. 418,

425 (1979).  Statutes such as the MHPA must require "clear and convincing evidence that the

individual is mentally ill and dangerous" to himself or others before officers may lawfully

involuntarily commit that individual.  <u>Foucha v. Louisiana</u>, 504 U.S. 71, 80 (1992) (quoting

<u>Jones v. United States</u>, 463 U.S. 354, 362 (1983)).  An officer can make a reasonable

determination to take a person to an emergency examination only upon his own "personal

observation of the conduct . . . constituting reasonable grounds to believe that he is severely

mentally disabled and in need of immediate treatment."  50 Pa. Cons. Stat. Ann. § 7302 (a)(2).

To establish that such exigent circumstances exist to justify involuntary commitment

under the MHPA,

> it is necessary to show an overt act involving attempted suicide or self-mutilation
> or the infliction or threat of serious bodily harm to others to support the finding.
> In the absence of such an overt act, actions indicating inability to satisfy his own
> need for nourishment, personal or medical care, shelter, or self-protection and
> safety must be shown.

Commonwealth ex rel. Gibson v. DiGiacinto, 439 A.2d 105, 107 (Pa. 1981).

Only the Defendants have moved for summary judgment on the issue of seizure of Plaintiff's person; thus, the facts must be considered in the light most favorable to Plaintiff, who is afforded the benefit of "every reasonable inference that can be drawn from the record." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000).

In this case, there is no evidence that Plaintiff had attempted suicide or engaged in self-mutilation.  In the absence of such evidence, Defendants must have believed that there was a threat of serious bodily harm to others or that Plaintiff was unable to satisfy his own needs for care or safety.  The evidence on this point is, however, in dispute.  Defendant Veater was unaware of any other person living in the home, and he had been advised that Plaintiff's son was no longer present. (Doc. No. 61, Dep. of Veater, 56-7).  Although certain of the Defendants testified that Plaintiff said he was going to "end it" (Doc. No. 61, Dep. of Veater, 69), or to go "get his guns" (Doc. No. 61, Dep. of Hansel, 49), Plaintiff testified that he stated only that he was "going to bed." (Doc. No. 61, Dep. of Mayo, 159).  Resolving such conflicting testimony is reserved to the fact-finder.

The fact-finder could also disbelieve the Defendant officers' characterization of Plaintiff's mood, which Plaintiff has disputed.  (Doc. No. 70 at 6.)  The record does not contain evidence that any one else was present at the home during the time Plaintiff conversed with the officers on the porch.  The absence of such evidence throws into question the officers asserted belief that Plaintiff presented a "clear and present danger" to himself or others, and must be balanced against other evidence such as the presence of firearms in the home and the officer's knowledge about Plaintiff's prior argument with his son.  There are genuine factual disputes

regarding each element that could form the basis for a reasonable decision to have the Plaintiff seized for involuntary commitment to a mental examination under 50 Pa. Cons. Stat. Ann. § 7302.  Accordingly, the Court will decline to adopt Magistrate Judge Smyser's recommendation on this issue and deny Defendants' motion for summary judgment on this claim.

### C.      Search of Plaintiff's Home

In Counts I through V of the Amended Complaint, Plaintiff alleges that Defendants, in their individual capacities, searched Plaintiff's home in violation of his Fourth Amendment rights.  (Doc. No. 10.)  Defendants moved for summary judgment on these claims, arguing that probable cause to search Plaintiff's home existed because:  (1) Plaintiff could no longer legally possess handguns pursuant to 18 Pa. Cons. Stat. Ann. § 6105; (2) Plaintiff's son could have been injured inside Plaintiff's home; and (3) the front door to the residence was not properly secured.  (Doc. No. 60.)  Plaintiff cross-moved for summary judgment on this issue, arguing that:  he was seized outside his home, thereby obviating any justification for conducting a search of the home; no one else was inside Plaintiff's home at the time; there was no risk of loss of evidence; there was no danger to Defendants; and Defendants could have secured Plaintiff's home without conducting a search of the premises.  (Doc. No. 49.)

Before conducting a non-consensual home search, police officers ordinarily must first apply for a warrant based on probable cause.  United States v. Acosta, 965 F.2d 1248, 1251 (3d Cir. 1992).  Without a warrant, a search or seizure inside a person's home is an "unconstitutional intrusion" unless "the occupants consent or probable cause and exigent circumstances exist to justify the intrusion."  United States v. Coles, 437 F.3d 361, 365-66 (3d Cir. 2006) (emphasis in original).

The need to protect or preserve life or avoid serious injury is an exigent circumstance that justifies a warrantless entry and search of a home. Mincey v. Arizona, 437 U.S. 385, 392 (1978); Good v. Dauphin County Soc. Servs. for Children & Youth, 891 F.2d 1087, 1093 (3d Cir. 1989). When the police enter a home without a search warrant under the claim of emergency or exigent circumstances, the burden is on the State to demonstrate the existence of such circumstances. Welsh v. Wisconsin, 466 U.S. 740, 750 (1984); see also Vale v. Louisiana, 399 U.S. 30, 34 (1970) (to excuse the absence of a warrant, the burden rests on the State to show the existence of these exceptional situations). Officers "must have reason to believe that life or limb is in immediate jeopardy and that the intrusion is reasonably necessary to alleviate the threat." Good, 891 F.2d at 1094.

By way of example, the United States Court of Appeals for the Seventh Circuit found that police officers had reasonable cause to believe that life or limb was in immediate jeopardy where a defendant answered the door with a knife in hand, officers observed a room in disarray, with furniture overturned, beds torn apart, the floor littered with syringes, and a bloody rag; and the defendant displayed a violent streak when he refused officers' request to enter the room and resisted the officers' subsequent efforts to handcuff him. United States v. Arch, 7 F.3d 1300, 1304-05 (7th Cir. 1993). In another decision, the Seventh Circuit found that officers reasonably believed that someone was in immediate jeopardy within the suspect's trailer when the officers had reliable information that the suspect had claimed to have killed someone, the suspect had been seen covered with blood and in possession of a sawed-off shotgun, and his last known location was his trailer. United States v. Salava, 978 F.2d 320, 324 (7th Cir. 1992). Similarly, the United States Court of Appeals for the Eighth Circuit found that officers had a reasonable

belief that someone was injured or in need of immediate aid where officers were told that a

person had been assaulted and they found a trail of blood leading to the defendant's front door.

United States v. Chipps, 410 F.3d 438, 442 (8th Cir. 2005).  Within this circuit, the United States

District Court for the Eastern District of Pennsylvania recently found that officers' entry into a

home without a warrant to ensure the safety and well-being of a woman and toddler was

reasonable based on the fact that an officer observed the two in the apartment immediately prior

to another officer witnessing suspects fleeing the apartment at the sight of him.  United States v.

Lewis, No.03-216, 2005 U.S. Dist. LEXIS 9176, *2-4 (E.D. Pa. May 17, 2005).

Defendants argue that probable cause existed to search Plaintiff's home pursuant to 18

Pa. Cons. Stat. Ann. § 6105(c)(4).  Section 6105 restricts a person who has been involuntarily

committed from possession, use, manufacture, control, sale or transfer of firearms.  18 Pa. Cons.

Stat. Ann. § 6105.  However, the plain language of Section 6105 provides that it does not apply

to proceedings under Section 7302 of the MHPA unless an examining physician has issued a

certification, within two hours of a patient's arrival at a mental health facility, that inpatient care

is necessary or that the patient is committable.  50 Pa. Cons. Stat. Ann. § 7302; see also In re

Sarver, 65 Pa. D. & C.4th 211 (York County 2003) (reinforcing the two-hour window for

involuntary civil commitment after York City Police brought a person to York Hospital for

evaluation).  In the instant case, Defendants have presented no evidence that a certification was

issued in accordance with Section 7302 of the MHPA.  Accordingly, the Court finds that

Defendants lacked probable cause to search Plaintiff's residence pursuant to 50 Pa. Cons. Stat.

Ann. § 6105.[4]

Defendants maintain that exigent circumstances were present in the instant case, and they point to the following facts in support of their position: the 911 dispatcher advised the officers that Plaintiff stated he would get violent; the officers believed that there were firearms in the home; they were concerned that the Plaintiff's son might have been injured and might be in the home; and the floor of the kitchen was littered with broken dishes, suggesting that a fight had occurred.[5]  (Doc. No. 78 at 13.)  However, it is undisputed that Plaintiff told Defendant Veater that Plaintiff's son had left the house and that Defendant Veater was not aware of any other person living in the home.  (Doc. No. 61, Dep. of Veater, 56-57).  Also, beyond the officers' understanding that an altercation had previously occurred, Defendant Stevens acknowledged that he had no "specific reason to believe that there might be somebody injured inside" before entering but was merely "going inside in good faith basically to see that no one else is injured." (Doc. No. 61, Dep. of Stevens, 53, 54.)

In this case, Defendants did not know that there was anyone in Plaintiff's home.  The mere fact that Plaintiff's son was not accounted for elsewhere does not create a reasonable inference that he was in the house and in jeopardy.  For purposes of evaluating Plaintiff's motion for summary judgment on this issue, even if defendants could see the broken dishware from their

---

[4]      Additionally, the clear language of 18 Pa. Cons. Stat. Ann. § 6105(a)(2) states that individuals covered under the statutes are to be given "a reasonable period of time, not to exceed 60 days from the date of the imposition of the disability . . . in which to sell or transfer that person's firearms to another eligible person," an element of the rule that the officers seem to have ignored.  See Commonwealth v. Appleby, 856 A.2d 191, 195 (Pa. Super. Ct. 2004). However, because Plaintiff was never covered by the statute, the Court need not reach this issue.

[5]  The Court notes that Plaintiff disputes the visibility of the dishware prior to entry.

position outside Plaintiff's home, the broken dishware and knowledge of gun ownership alone is

not enough to show an imminent and substantial threat to life or health, since there was no

evidence to suggest the presence of other people.  Unlike Arch, Salva, or Chipps, here there was

no further evidence, such as the presence of blood, that would indicate someone was in

immediate need of aid.  Arch, 7 F.3d at 1304-05; Salava, 978 F.2d at 324; Chipps, 410 F.3d at

443.  Unlike Lewis, there was no knowledge of anyone's particular presence inside.  Lewis,

2005 U.S. Dist. At *2.  Therefore, the Court finds that the circumstances existing at the time of

arrest failed to justify an objectively reasonable belief that life or limb was in immediate

jeopardy.  The Court declines to adopt Magistrate Judge Smyser's recommendation and will

deny Defendants' motion for summary judgment on the basis that immediate need justified the

search.[6]

Finally, Defendants argue that exigent circumstances existed to justify their entry into the

home to search for weapons because the front door to the residence was not properly secured.

Despite the condition of the door, Judge Smyser found that Defendants should have first sought a

warrant to search the home for weapons.  (Doc. No. 78 at 14.)  The Court agrees with Judge

Smyser that Plaintiff's "house could have been attended and guarded against a disturbance, with

the plaintiff on his way to the hospital, while a warrant application was made to a judicial

officer."  Id.  Furthermore, Defendant Veater testified that the Deputy Fire Chief had been

summoned to seal Plaintiff's front door to secure Plaintiff's property.  (Doc. No. 61, Dep. of

---

[6]  In making this finding, the Court notes that the Third Circuit has instructed that the
immediate-need "exception must not be permitted to swallow the rule:  in the absence of a
showing of true necessity – that is, an imminent and substantial threat to life, health or property –
the constitutionally guaranteed right to privacy must prevail."  Good v. Dauphin County Soc.
Servs. for Children & Youth, 891 F.2d 1087, 1094 (3d Cir. 1989) (citations omitted).

Veater, 91-2.)  Plaintiff's possessions, including his firearms, could have been protected as effectively without engaging in a warrantless search of his home.  Accordingly, the Court will adopt Judge Smyser's recommendation that the security of Plaintiff's residence fails to amount to exigent circumstances that would justify the search of Plaintiff's home for weapons.

In summary, the Court finds that there is no evidence that a certification was issued in accordance with § 7302 of the MHPA, and therefore Defendants did not have probable cause to search Plaintiff's residence under 50 Pa. Cons. Stat. Ann. § 6105.  The Court also finds that the circumstances failed to support an objectively reasonable belief that life or limb was in immediate jeopardy.  Finally the Court finds no evidence in the record that exigent circumstances existed to justify a search of Plaintiff's home for weapons, and the record demonstrates that Plaintiff's house could have been attended and guarded against a disturbance until a warrant application was made to a judicial officer or the Deputy Fire Chief could seal the broken front door.  Accordingly, Plaintiff's motion for summary judgment will be granted on this issue and Defendant's motion will be denied.

### D.      Seizure of Plaintiff's Firearms

In Counts I through V of the Amended Complaint, Plaintiff alleges that Defendants in their individual capacities seized Plaintiff's property in violation of the Fourth Amendment. (Doc. No. 10.)  Defendants moved for summary judgment, arguing that probable cause to seize Plaintiff's firearms existed, again because:  Plaintiff could no longer legally possess handguns pursuant to 18 Pa. Cons. Stat. Ann. § 6105; Plaintiff's son was unaccounted for; and the front door to the residence was not properly secured.  (Doc. No. 60.)  Plaintiff cross-moved for summary judgment, arguing that Defendants lacked probable cause to seize Plaintiff's firearms.

(Doc. No. 49.)  In his report and recommendation, Judge Smyser concluded that there was no

legal basis for Defendants to seize and retain Plaintiff's firearms.  (Doc. No. 78.)  As a result,

Judge Smyser recommended that the Court grant summary judgment in favor of Plaintiff on this

issue.

Defendants object to Judge Smyser's recommendation on the grounds that that the

individual officers were not involved in the decision to retain or return the seized weapons.

(Doc. No. 88 at 4.)  Assuming, arguendo, that Defendants were not involved in the decision to

retain or return the seized weapons, the Court finds Defendants argument without merit on the

issue of the initial seizure of Plaintiff's firearms.  The record is clear that Defendants Veater and

Stevens made the decision to seize Plaintiff's weapons without a warrant.

As discussed in Section C, supra, Defendants did not have probable cause under 18 Pa.

Cons. Stat. Ann. § 6105 to search for Plaintiff's firearms, as they were not contraband, fruits of,

an instrumentality of, or evidence of a crime.  Pa. R. Crim. P. Rule 201.  Defendants reassert

their argument that Plaintiff's weapons were secured because the door was hanging open, the son

was unaccounted for, and Plaintiff might have returned to the residence.  (Doc. No. 88.)

However, as discussed above, the Court agrees with Judge Smyser's conclusion that Defendants

could have guarded the entrance until the Deputy Fire Chief could seal the front door.  (Doc. No.

61, Dep. of Veater, 91-92.)  Furthermore, assuming arguendo that exigent circumstances existed

to justify search of Plaintiff's home for someone in immediate need of aid, any such search

would be limited to searching for an injured person.  Mincey v. Arizona, 437 U.S. 385, 393

(1978) (warrantless search is limited by the exigencies which justify the intrusion).  In this case,

however, the Court finds that the facts of which the officers were aware failed to support an

objectively reasonable belief that any such exigent circumstance existed.  Accordingly, Plaintiff

will be granted summary judgment on this issue.

E.     **Qualified Immunity**

In their motion for summary judgment, Defendants argue that the individual Defendants

are entitled to qualified immunity.  (Doc. No. 60.)  In his report and recommendation, Magistrate

Judge Smyser concluded that Defendants were not entitled to qualified immunity because

conducting a search and seizure without a warrant or probable cause to believe a crime had been

committed  is a violation of clearly established law.

Qualified immunity generally shields government officials performing discretionary

functions from liability for civil damages, so long as the officials' "conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The Court considers first whether the

plaintiff has alleged the deprivation of an actual constitutional right, and next whether the right

was clearly established to a degree of particularity within the specific context of the case at issue,

such that a reasonable government official should have known that his alleged action violated the

plaintiff's rights.  Saucier v. Katz, 533 U.S. 194, 199-200 (2001); Eddy v. V.I. Water and Power

Auth., 256 F.3d 204, 208 (3d Cir. 2001); see also United Artists Theatre Circuit, Inc. v. Twp. of

Warrington, 316 F.3d 392, 398-99 (3d Cir. 2003) (a court must "determine first whether the

plaintiff has alleged a deprivation of a constitutional right at all, before reaching the question of

whether the right was clearly established at the time").

In determining whether a police officer is entitled to qualified immunity, both the

existence of a clearly established right and the objective reasonableness of the officers' actions

are questions of law for the Court to decide.  Sharrar v. Felsing, 128 F.3d 810, 828 (3d Cir.

1997).  There is an issue for the jury "[o]nly if the historical facts material to the latter issue are

in dispute . . . ."  Sharrar, 128 F.3d at 828.  This analysis must occur for each individual

defendant based on his particular conduct.  Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir.

1996).  For the purpose of determining qualified immunity, all allegations must be viewed in the

light most favorable to Plaintiff.  Saucier, 533 U.S. at 201.

Law enforcement officials who "reasonably but mistakenly" conclude that their conduct

comports with the requirements of the Fourth Amendment are entitled to immunity.  Sharrar v.

Felsing, 128 F.3d at 826 (citing Hunter v. Bryant, 502 U.S. 224, 227 (1991)).  As a result, "the

qualified immunity standard gives ample room for mistaken judgments by protecting all but the

plainly incompetent or those who knowingly violate the law." Id. (internal quotations omitted).

An officer's "subjective beliefs about the legality of his or her conduct generally 'are

irrelevant.'" Id. (citing Anderson v. Creighton, 483 U.S. 635, 641 (1987)).

In support of their claim for qualified immunity, Defendants argue that it would not be

clear to a reasonable officer under the same circumstances and at the same time that:  (1) taking

Plaintiff into custody and transporting him to the hospital for an evaluation pursuant to § 7302 of

the MHPA violated clearly established law; (2) entering Plaintiff's home to ensure no one inside

the home was injured violated clearly established law; and (3) seizing Plaintiff's weapons

violated clearly established law.

Each of these elements is  based on clear Fourth Amendment rights.  See O'Connor v.

Ortega, 480 U.S. 709, 714-15 (1987) (establishing that the Fourth Amendment applies to

seizures without probable cause made for civil purposes); Mincey v. Arizona, 437 U.S. 385, 390

(1978) (warrantless search of a home outside few exceptions is unreasonable under the Fourth

Amendment).  However, the objective reasonableness of the officers' actions depends on

disputed material facts: reasonable seizure of Plaintiff's person requires the police to be

presented with demonstrations or language of violence and mental instability, which Plaintiff

denies;[7] and reasonable search of Plaintiff's home requires the officers' awareness of life or limb

likely being in serious jeopardy, which Plaintiff also denies.[8]

Furthermore, reasonable seizure of Plaintiff's property cannot be established pursuant to

statutory authorization because the seizure was conducted in violation of the plain meaning of 50

Pa. Cons. Stat. Ann. § 6015.  Even if it were the case that Defendants Stevens and Veater

believed that exigent circumstances were present to allow them to search the house, any seizure

of Plaintiff's belongings must be related to the objectives of the authorized intrusion.  Arizona v.

Hicks, 480 U.S. 321 (1987) (seizure of a person's belongings must be related to the objectives of

the authorized intrusion); Mincey, 437 US. at 393.  It is undisputed that the only signs of

struggle were found in the kitchen at the back of Plaintiff's home.  It is also undisputed that the

weapons were seized from an "alcove or closet" and a bedroom, both located on the second

floor.  (Doc. No. 61, Dep. of Stevens, 60-1.)  While the Court fails to find the existence of

_____

[7] Defendants cannot rely on the information provided by the 911 dispatcher, who warned that Plaintiff "felt messed up and would get violent," since an emergency examination without a warrant must be made "upon personal observation."  50 Pa. Cons. Stat. Ann. § 7302 (a)(2).

[8] The only possible visual evidence of a threat to life in the home was broken dish ware in the kitchen, deemed insufficient on summary judgment, supra, and specifically denied to be visible to Defendant Stevens, who only claimed to see it "when we went in."  (Doc. No. 61, Dep. of Stevens, 54.)  Defendant Veater, though not specifically denying his knowledge of broken dishes, did not present any further evidence sufficient to determine that a reasonable officer would have determined that someone was in immediate need of aid.

exigent circumstances adequate in this case to conduct a warrantless search for people in need of immediate aid, supra, the Court further concludes that no reasonable officer under the circumstances would reasonably believe that seizing Plaintiff's weapons from an upstairs "alcove or closet" is related to a valid search for such people.  See Salava, 978 F.2d at 325 (qualifying the permission to search for shooting victims to be brief and "limited to the circumstances that justified it.")

Accordingly, the Court will deny Defendants' motion for summary judgment on the issue of qualified immunity for the seizure of Plaintiff with respect to Defendants Veater, Stevens, and Hansel.  The Court will also deny Defendants' motions for summary judgment on the issues of qualified immunity for the search of Plaintiff's house and the seizure of his property.

### F.    **Municipal Liability**

In Counts VI - VIII of the Amended Complaint, Plaintiff alleges that Defendant York violated Plaintiff's Fourth and Fourteenth Amendment rights.  (Doc. No. 10.)  Specifically, in Count VI, Plaintiff contends that Defendant York maintains a policy, practice, custom, or procedure that its police officers may make warrantless arrests and searches without probable cause or exigent circumstances.  In Count VII, Plaintiff claims that Defendant York has failed to train its police officers with regard to making warrantless arrests and searches without probable cause or exigent circumstances.  Finally in Count VIII, Plaintiff alleges that Defendant York maintained a policy, practice, custom, or procedure that it was not required to return wrongfully seized personal property.

Defendants argue that there is no evidence of record to establish that the York City Police Department maintains a policy, practice, or custom that caused Plaintiff's alleged injuries.

Defendants also argue that there is no evidence that the York City Police Department failed to properly train or supervise the officers in its employ and no evidence that the officers involved were not properly trained and supervised.

Magistrate Judge Smyser recommended that Defendant York's motion for summary judgment be denied as to Plaintiff's claim that his firearms were wrongfully seized and retained. (Doc. No. 78.)  In reaching this recommendation, Judge Smyser concluded that Defendant "York has not demonstrated that it did not participate by a policy or a directive in the decision not to return property wrongfully seized to its owner."  (Id. at 29.)  In support of their objections to the report and recommendation, Defendants cite Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), for the proposition that York clearly discharged its burden by pointing out to the Court in its supporting brief that Plaintiff failed to come forward with evidence to show that York used a policy or custom that deprived Plaintiff of his civil rights.  (Doc. No. 88 at 6.)

A municipality may be held liable under 42 U.S.C. § 1983 only when the municipality itself causes the constitutional violation, not simply under a theory of respondeat superior.  City of Canton v. Harris, 489 U.S. 378, 387 (1989); Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004).  A municipality may be found liable under § 1983 if the plaintiff can establish that the "execution of the government's policy or custom . . . inflicts the injury," Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978), or "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, 489 U.S. at 388.  However, a plaintiff cannot prevail by merely alleging that the municipality had a policy or that the municipality's training program was inadequate.  Id. at 390.  Under either theory of liability, there must be a direct causal link

24

between a municipal policy, custom, or inadequacy of training and the alleged constitutional violation.  Carswell, 381 F.3d at 244.

The Third Circuit has stated that policy is made by an official statement of a "decisionmaker possessing final authority to establish municipal policy," and custom can be shown by the presence of a course of conduct that "is so well-settled and permanent as virtually to constitute law."  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).  A plaintiff must identify a municipal policy or custom that amounts to deliberate indifference to the rights of people with whom the police come into contact.  Carswell, 381 F.3d at 244 (citing City of Canton, 489 U.S. at 388).[9]  Such a deliberate indifference may be found when a municipality has "disregarded a known or obvious consequence of [its employees'] action."  Bd. of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997).

### 1.        Seizure and Retention of Plaintiff's Property

Plaintiff claims that a jury could find that there was an attitude of deliberate or reckless indifference to Plaintiff's rights through Defendant York's actions with regard to its unjustified retention of Plaintiff's firearms.  (Doc. No. 71 at 42.)  Plaintiff further alleges that Don Hoyt, the solicitor for the City of York,[10] is a policy maker for Defendant York and that he clearly directed the Defendant's actions with respect to the retention of Plaintiff's firearms.  (Id.)  Defendants argue that Plaintiff has failed to produce evidence to support these allegations.  (Doc. No. 76 at

---

[9]  This policy or custom "typically requires proof of a pattern of underlying constitutional violations."  Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004) (citing Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000).

[10]  Solicitor Don Hoyt is not named as a defendant in this case.

14-17.)

Captain Arnold's testimony indicates that there was a prior incident that involved York's seizure of weapons in the course of a Section 7302 evaluation of a Brian Sarver. (Doc. No. 61, Dep. of Arnold, 72.)  Investigation of Sarver's case reveals that York had previously received a ruling that required them to return firearms taken from Mr. Sarver on or about June 30, 2000, after York police had taken him for an emergency evaluation under Section 7302 of the MHPA, but the York Hospital officials did not involuntarily commit him within the requisite two hours. In re Sarver, 65 Pa. D. & C.4th 211 (York County 2003).  Even after that decision was in place, Captain Arnold testified in his deposition that he "decided upon consulting with the solicitor that we would wait until [Hoyt] did some legal research" before returning the guns to Plaintiff.  (Doc. No. 71, Dep. of Arnold, 12.)  Further actions of police officers that did not take the Sarver ruling into account may be sufficient to demonstrate "deliberate indifference" to these actions by their officers in the field.  Brown, 520 U.S. at 410.  Accordingly, Plaintiff has met his burden of coming forward with evidence to defeat Defendant York's motion for summary judgment on the issue of seizure and retention of Plaintiff's property.

**2.    Seizure of Plaintiff's Person and Search of Plaintiff's Home.**

Plaintiff argues that Don Hoyt acted with deliberate indifference to Plaintiff's rights by failing to discipline the Defendant officers for violating Plaintiff's right to be free from unreasonable search of his home and seizure of his person.  (Doc. No. 71 at 37.)  Plaintiff also contends that Defendant York maintains a policy that its officers may effectuate warrantless arrests and searches without probable cause or exigent circumstances.  (Doc. No. 10 at ¶ 87.)

Captain David Arnold testified that, in addition to receiving training at the police academy, police officers receive yearly mandatory updates on dealing with warrantless searches, warrantless seizures, and with citizens with mental health issues.  (Doc. No. 61, Dep. of Arnold, 81-82.)  Plaintiff has offered no evidence that there were past violations similar to the incidents at issue in this case or even knowledge on the part of the policymakers for Defendant York that its customs, policies, and training programs may lead to constitutional violations.  While Defendant Veater testified vaguely but affirmatively to the question that he had entered a home to seize weapons "when the individual had been taken for the 302 evaluation," (Doc. No. 61, Dep. of Veater, 86) and Defendant Hansel testified, "[he is] just sure [he has] done it,"(Doc. No. 61, Dep. of Hansel, 76) in reference to previous attempts to enter a person's home without a warrant to enforce Section 7302 of the MHPA, the only specific prior event of which the Court is aware expresses a practice of receiving consent to search a home after attempted enforcement of the MHPA.  In re Sarver, 65 Pa. D. & C.4th at 213.  These vague statements cannot be seen to rise to the level of a custom "so well-settled and permanent as virtually to constitute law," especially when the specific prior act suggests a proper course of action with respect to conducting a search. Bielevicz, 915 F.2d at 850.  There is no evidence to suggest a deficiency in

training.  Therefore, the Court finds that Plaintiff has failed to support his claim that Defendant

York's custom, policies, or training resulted in a deliberate indifference to the rights of people

with whom the police come into contact.  Accordingly, the Court will grant summary judgment

in favor of Defendant York on the issues of seizure of Plaintiff's person and search of Plaintiff's

home.

G.     **Motion to Strike**

Plaintiff has filed a motion to strike two of Defendants' exhibits from the record.

Magistrate Judge Smyser has recommended that Plaintiff's motion to strike be granted and that

Exhibits 9 and 10, (Doc. No. 61),  filed by Defendants, not be considered by the Court in its

determination of the motions for summary judgment.  In reaching this conclusion, Judge Smyser

found that the exhibits in question are after-the-fact evidence of medical decisions and treatment.

Neither Plaintiff nor Defendants have filed objections to Judge Smyser's findings with

respect to Plaintiff's motion to strike.[11]  In the exercise of sound judicial discretion, the Court

may rely on the Magistrate Judge's proposed findings and recommendations.  United States v.

Raddatz, 447 U.S. 667, 676 (1980); Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).  Although

United Steelworkers of Am. v. New Jersey Zinc Co., Inc., 828 F.2d 1001, 1006 (3d Cir. 1987)

says that "the better practice" is for the district judge to review all of the magistrate judge's

determinations on dispositive issues of law regardless of the existence vel non of objections, the

Court agrees that the medical evaluations set forth in these two exhibits, which were made

---

[11]  When objections to a report and recommendation have been filed, the Court must
make a de novo consideration of those portions of the report to which the objections relate.
Carter v. Apfel, 220 F. Supp. 2d 393, 395 (M.D. Pa. 2000) (citing Sample v. Diecks, 885 F.2d
1099, 1106 n.3 (3d Cir. 1989)).

following the Defendants' actions, are not relevant.  Accordingly, the Court will adopt

Magistrate Judge Smyser's recommendation and Plaintiff's motion to strike Exhibits 9 and 10,

(Doc. No. 61),  filed by Defendants in support of the motion for summary judgment will be

granted.

**IV.    <u>CONCLUSION</u>**

For all of the reasons discussed above, Magistrate Judge Smyser's Report and

Recommendation will be adopted in part.  Plaintiff's partial motion for summary judgment on

the issue of the search of Plaintiff's home and seizure of Plaintiff's property will be granted.

Similarly, Plaintiff's motion to strike Exhibits 9 and 10, (Doc. No. 61), filed by Defendants will

be granted.  Defendants' motion for summary judgment will be granted in part and denied in

part.  An appropriate order follows this memorandum.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SHANNON MAYO,                    :
                                 :
        Plaintiff               :       CIVIL ACTION NO. 1:04-CV-2272
                                 :
        v.                       :       (Chief Judge Kane)
                                 :
THE CITY OF YORK, PA;            :
JOHN VEATER; CLAY STEVENS;       :
NICK HANSEL; BART SEELIG;        :
and SHAWN ROSIER,                :
                                 :
        Defendants              :


**ORDER**

**AND NOW** this 9th day of January 2007, upon consideration of the foregoing, **IT IS**

**HEREBY ORDERED THAT**:

1.   Plaintiff's Partial Motion for Summary Judgment (Doc. No. 46) is
     **GRANTED** with respect to Defendants Veater and Stevens on the issues
     of search of Plaintiff's home and seizure of Plaintiff's property (Counts I
     and II).

2.   Plaintiff's Motion to Strike (Doc. No. 74) is **GRANTED** and Exhibits 9
     and 10 of Doc. No. 61 filed by Defendants will be stricken from the
     record.

3.   Defendants' Motion for Summary Judgment (Doc. No. 56) is **GRANTED**
     with respect to Defendants Seelig and Rosier (Counts IV and V).

4.   Defendants' Motion for Summary Judgment (Doc. No. 56) is **GRANTED**
     with respect to Defendant Hansel on the issues of search of Plaintiff's
     home and seizure of Plaintiff's property.

5.   Defendants' Motion for Summary Judgment (Doc. No. 56) is **DENIED**
     with respect to Defendants Veater, Hansel, and Stevens on the issue of
     seizure of Plaintiff pursuant to 15 Pa. Cons. Stat. Ann. § 7302.

6.      Defendants' Motion for Summary Judgment (Doc. No. 56) is **DENIED** with respect to Defendants Veater and Stevens on the issue of search of Plaintiff's home and seizure of Plaintiff's property.

7.      Defendants' Motion for Summary Judgment (Doc. No. 56) is **GRANTED** with respect to Defendant York on the issues of seizure of Plaintiff and search of Plaintiff's home.  (Counts VI and VII).

8.      Defendants' Motion for Summary Judgment (Doc. No. 56) is **DENIED** with respect to Defendant York on the issue of retention of wrongfully seized personal property (Count VIII).

The Clerk of Court shall refrain from entering judgment in favor of any party in accordance with this Order until the conclusion of this action.

**IT IS FURTHER ORDERED THAT** the Court shall convene a telephone conference with the parties on January 31, 2007 at 10:00 a.m.  Plaintiff's counsel shall initiate the call.  The Court's telephone number is (717) 221-3990.

S/ Yvette Kane_____
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania